**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**MAGDALENO GARCIA GARCIA, A# 096329654,**

**Petitioner,**

**v.** **Case No. 2:26cv452**

**JEFFREY CRAWFORD, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1. Respondents oppose granting the Petition. ECF No. 5. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED** without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Petition was filed on May 12, 2026. ECF No. 1. Petitioner Magdaleno Garcia Garcia ("Petitioner") is a native and citizen of Honduras who is currently detained at Farmville Detention Facility pursuant to 8 U.S.C. § 1231. ECF No. 5, attach. 1 at 2. On April 3, 2003, Border Patrol officers encountered Petitioner at or near Eagle Pass, Texas after Petitioner entered the United States from Mexico without inspection at a location not designated as a port of entry. *Id.* After establishing Petitioner's identity, Border Patrol officers confirmed that Petitioner had entered the United States without being admitted or paroled. *Id.* Petitioner was subsequently released under an order of recognizance and served with a Notice to Appear ("NTA") placing him in removal

proceedings and charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled or who entered the United States at a time or place not designated by the Attorney General. *Id.* at 2–3; *see* ECF No. 5, attach. 2. Petitioner's NTA was filed with the Immigration Court on May 12, 2003. ECF No. 5, attach. 1 at 3.

Petitioner was scheduled to appear before the Immigration Court on June 17, 2003, for a master calendar hearing. *Id.*; *see* ECF No. 5, attach. 3. Petitioner failed to appear at that hearing, and an Immigration Judge ordered him removed in absentia to Honduras. ECF No. 5, attach. 1 at 3; *see* ECF No. 5, attach. 3.

On October 27, 2012, a Warrant of Removal/Deportation was issued for Petitioner. *See* ECF No. 5, attach. 4. On November 6, 2012, Immigration and Customs Enforcement ("ICE") officers encountered Petitioner at or near Manassas Park, Virginia. ECF No. 5, attach. 1 at 3. After establishing Petitioner's identity, ICE officers confirmed that Petitioner was present in the United States without lawful status and was subject to an outstanding final order of removal. *Id.* Petitioner was taken into civil immigration custody pending his removal from the United States. *Id.* On December 6, 2012, Petitioner was removed to Honduras. *Id.*

On April 18, 2024, Petitioner was encountered at the Prince William County Jail in Manassas, Virginia following his arrest for possession of a controlled substance in violation of Virginia Code § 18.2-250 and driving while intoxicated in violation of Virginia Code § 18.2-266. *Id.* After establishing Petitioner's identity, ICE officers confirmed that Petitioner was present in the United States without lawful status and had reentered the United States without inspection at an unknown date and location after having been issued a final order of removal. *Id.* Petitioner was taken into civil immigration custody and served with a Notice of Intent/Decision to Reinstate

Prior Order, pursuant to 8 U.S.C. § 1231(a)(5). *Id.*; *see* ECF No. 5, attach. 5. Petitioner expressed a fear of returning to Honduras and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear interview. ECF No. 5, attach. 1 at 3–4.

On May 13, 2024, Petitioner was interviewed by a USCIS officer regarding his fear of removal claim. *Id.* at 4. On May 17, 2024, a USCIS officer determined that Petitioner had failed to establish a reasonable fear of persecution or torture pursuant to 8 C.F.R. § 208.31. *Id.* Petitioner requested Immigration Court review of that determination and was issued a Notice of Referral to Immigration Judge for a Reasonable Fear Review. *Id.*; *see* ECF No. 5, attach. 8. On May 23, 2024, an Immigration Judge vacated the USCIS officer's determination and placed Petitioner in withholding-only proceedings before the Immigration Court. ECF No. 5, attach. 1 at 4; *see* ECF No. 5, attach. 9.

On June 4, 2024, Petitioner filed a motion to reopen with the Immigration Court seeking rescission of the June 17, 2003, removal order. ECF No. 5, attach. 1 at 4. Petitioner's motion to reopen was denied by an Immigration Judge on June 20, 2024. *Id.*

On July 10, 2024, ICE issued Petitioner a Release Notification advising that he would be released from custody subject to the conditions set forth in his Order of Supervision ("OSUP"). *Id.*; *see* ECF No. 5, attach. 12. Petitioner was informed that any violation of those conditions, or of any local, state, or federal law, could result in his return to immigration custody. ECF No. 5, attach. 1 at 4; *see* ECF No. 5, attach. 12. On July 11, 2024, Petitioner was released from ICE custody pursuant to the OSUP. ECF No. 5, attach. 1 at 4; *see* ECF No. 5, attach. 11.

On February 25, 2025, Petitioner filed an Application for Asylum and for Withholding of Removal, with the Immigration Court. ECF No. 5, attach. 1 at 4. On March 20, 2025, Petitioner was convicted of driving while intoxicated in violation of Virginia Code § 18.2-266 and was

sentenced to ninety days' imprisonment, with eighty-eight days suspended. *Id.*; *see* ECF No. 5, attach. 6. On June 12, 2025, Petitioner was convicted of possession of a controlled substance in violation of Virginia Code § 18.2-250(A)(B) and was sentenced to ninety days' imprisonment, all suspended, and one year of unsupervised probation. ECF No. 5, attach. 1 at 5; *see* ECF No. 5, attach. 7.

On December 19, 2025, an Immigration Judge denied Petitioner's request for withholding of removal under the Immigration and Nationality Act and the Convention Against Torture. ECF No. 5, attach. 1 at 5; *see* ECF No. 5, attach. 13. On January 2, 2026, Petitioner appealed that decision to the Board of Immigration Appeals ("BIA"), which remains pending. ECF No. 5, attach. 1 at 5.

On April 7, 2026, Petitioner reported to a scheduled appointment with the Intensive Supervision Appearance Program in Manassas, Virginia. *Id.* Prior to that appointment, immigration officials conducted a case review and determined that Petitioner had violated the conditions of his OSUP based on his convictions for driving while intoxicated and possession of a controlled substance. *Id.* During the appointment, Petitioner was informed of those violations and was taken into civil immigration custody. *Id.* On the same date, Petitioner's OSUP was revoked, and he was served with a Notice of Revocation of Release. *Id.* Petitioner was also provided an Alien Informal Interview in connection with the revocation of his OSUP. *Id.*

Petitioner filed the Petition on May 12, 2026, arguing that his continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment because he has been mistakenly classified as an applicant for admission and detained under the mandatory detention provision of 8 U.S.C. § 1225(b). ECF No. 1 at 6–7. Petitioner requests that the Court order his immediate release from custody. *Id.* at 8.

Respondents filed an Opposition to the Petition on May 19, 2026, along with the Declaration of Charles M. Byrne, Assistant Field Office Director with ICE ("Byrne Declaration").[1] ECF No. 5; ECF No. 5, attach. 1. Respondents argue that the Petition should be dismissed because Petitioner failed to cite his relevant detention authority under § 1231 and because Petitioner's detention complies with *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). ECF No. 5 at 9–13. Specifically, Respondents argue that Petitioner's detention has not exceeded six months and thus remains within the presumptively reasonable period set by *Zadvydas*, and that Petitioner cannot demonstrate that his removal is not reasonably foreseeable. *Id.* at 11–13. Respondents further argue that Petitioner requests additional due process than what is required under *Zadvydas*, and that even if Petitioner was entitled to additional due process, the relevant test under *Mathews v. Eldridge* does not require the relief he seeks and weighs in favor of his continued detention. *Id.* at 13–19.

After the Court had not received a reply from Petitioner, the undersigned issued its Report and Recommendation on June 18, 2026. ECF No. 7. On July 7, 2026, Petitioner filed a "Statement and Request for Release," asserting that "[t]he respondent[s] filed a response on June 18, 2026," and that it was "delivered to [Petitioner] on June 26, 2026." ECF No. 8 at 1. Based on Petitioner's filing, the District Judge determined that Petitioner had not received a copy of Respondents' Opposition and accordingly directed the Clerk to send Petitioner a copy of the Opposition and gave Petitioner until July 22, 2026, to submit his reply. ECF No. 9 at 2.

---

[1] Respondents argue that, as an initial matter, any possible claims from Petitioner regarding his fear of removal to Honduras are not ripe for review and that should Petitioner seek relief from removal, Respondents request time to file additional briefing to address such claims. ECF No. 5 at 8–9. As Respondents note, Petitioner's sole claim for relief is that he is not subject to mandatory detention, and Petitioner only requests that he be immediately released from custody. *See* ECF No. 1 at 6–8. Accordingly, the Court does not construe the Petition as challenging Petitioner's removal to Honduras or seeking any relief from removal and therefore will not address those issues here.

On July 20, 2026, Petitioner filed his reply, titled as his "Supplemental Statement." ECF No. 10. Therein, Petitioner challenges the outcome of his reasonable fear interview and attaches a copy of the Reasonable Fear Determination Checklist and Written Analysis, arguing that his fear interview "shows credibility in which [ICE is] choosing to ignore." ECF No. 10 at 1; *see id.* at 3. Petitioner also argues that he has been in ICE custody for three months and seven days at the time of his filing, attaching copies of a Department of Homeland Security document titled "Notice to EOIR: Alien Address," which shows the date on which Petitioner was detained by ICE, April 7, 2026. *Id.* at 1; *see id.* at 4–5. Finally, Petitioner argues that ICE is attempting to prosecute him for the "same exact misdemeanors" that Petitioner was charged with in April 2024 even though he had been released from ICE custody in July. *Id.* at 2. Accordingly, he requests that this Court grant his release from custody.

Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process

Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). The Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Id.* After that six-month period has elapsed, if the alien[2] demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

**A. Petitioner is Detained Pursuant to 8 U.S.C. § 1231**

Respondents first argue that the Petition should be dismissed because Petitioner incorrectly challenges his detention under 8 U.S.C. § 1226 and fails to cite his relevant detention authority under § 1231. ECF No. 5 at 9–10. According to Respondents, because a habeas petition must challenge the legality of Petitioner's actual custody, Petitioner cannot establish that his detention is unlawful while relying on the wrong statutory authority. *Id.*

---

[2] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

Respondents are correct that the proper authority for Petitioner's detention is § 1231. Petitioner was originally ordered removed in absentia on June 17, 2003, after failing to appear in immigration court for his hearing. *See* ECF No. 5, attach. 3. Following Petitioner's removal to Honduras in 2012, he subsequently reentered the United States without inspection and was served with a Notice of Intent/Decision to Reinstate Prior Order pursuant to 8 U.S.C. § 1231(a)(5) on April 18, 2024. *See* ECF No. 5, attach. 5. After Petitioner expressed a fear of return, an Immigration Judge placed him in withholding-only proceedings, and on December 19, 2025, an Immigration Judge denied Petitioner's request for withholding of removal under the Immigration and Nationality Act and the Convention Against Torture. *See* ECF No. 5, attachs. 9, 13. On January 2, 2026, Petitioner appealed that decision to the BIA, which remains pending. ECF No. 5, attach. 1 at 5.

The Supreme Court has held that an alien subject to a reinstated removal order remains subject to a final order of removal during withholding-only proceedings and is therefore detained pursuant to § 1231, not § 1226. *Johnson v. Guzman Chavez* found that withholding-only proceedings do not disturb the validity of a reinstated removal order because such proceedings determine only whether the alien may be removed to a particular country, not whether the alien is removable at all. *See* 594 U.S. 523, 539–41 (2021) ("[R]emoval orders and withholding-only proceedings address two distinct questions. As a result, they end in two separate orders, and the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings."). Thus, a reinstated removal order is administratively final notwithstanding the pendency of withholding-only proceedings. *See id.* at 540 ("Because the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of

removal."). Because the reinstated removal order remains final, detention during withholding-only proceedings is governed by § 1231. *Id.* at 543–44 ("The placement of the statutory-withholding provision in § 1231 is therefore strong evidence that withholding-only proceedings are relevant to where an alien will be removed (and therefore detention under § 1231), not whether the alien will be removed at all (and therefore detention under § 1226).").

That is precisely the circumstance in which Petitioner finds himself. Petitioner's 2003 removal order was reinstated pursuant to § 1231(a)(5), and the withholding-only proceedings initiated after the Immigration Judge vacated the negative reasonable-fear determination did not vacate, reopen, or otherwise negate that reinstated order. *See* ECF No. 5, attach. 9. Furthermore, although Petitioner's appeal from the denial of withholding of removal remains pending before the BIA, that appeal concerns only whether Petitioner may be removed to Honduras and does not affect the finality of the reinstated removal order itself. *See Johnson*, 594 U.S. at 541. Thus, Petitioner remains subject to a final order of removal and is detained pursuant to § 1231.

The Court is not persuaded, however, that dismissal of the Petition is warranted merely because Petitioner incorrectly identified § 1226 as the statutory basis for his detention. Petitioner is proceeding in this matter as a pro se litigant, and pro se filings must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" (citation omitted)). The essence of the Petition challenges the legality of Petitioner's continued immigration detention and seeks immediate release from custody. *See* ECF No. 1 at 6–8. Accordingly, the Court construes the Petition according to its substance rather than its citation to the incorrect detention statute and analyzes Petitioner's detention under the framework governing post-final-order detention set forth in

*Zadvydas*. *See Castro v. United States*, 540 U.S. 375, 381–82 (2003) ("Federal courts sometimes will ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. . . . They may do so in order to avoid an unnecessary dismissal, . . . to avoid inappropriately stringent application of formal labeling requirements, . . . or to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis[.]" (citations omitted)).

Because Petitioner is detained pursuant to § 1231 under a final reinstated order of removal, the Court proceeds to evaluate his challenge under *Zadvydas*.

**B. Petitioner's Detention is Presumptively Reasonable**

Respondents further argue that Petitioner's detention complies with *Zadvydas* because Petitioner has not been detained for longer than six months, and thus his post-final-order detention falls within the presumptively reasonable period during which continued detention to effectuate his final order of removal is lawful.[3] ECF No. 5 at 11.

Here, Petitioner has been in post-final order of removal detention since April 7, 2026, almost four months.[4] Accordingly, his detention falls within the six-month presumptively reasonable period recognized in *Zadvydas*, and his continued detention to effectuate his final order of removal is lawful.[5] Petitioner also does not allege, nor does the record suggest, that his removal

---

[3] In their Opposition, Respondents incorrectly assert that Petitioner has been detained since December 12, 2025, which is inconsistent with the Byrne Declaration, which states that Petitioner was taken into custody on April 7, 2026. *Compare* ECF No. 5 at 11, *with* ECF No. 5, attach. 1 at 5. Respondents further assert—again, incorrectly—that Petitioner "concedes" that his detention began on December 12, 2025, and appear to cite to a paragraph in the Petition that does not exist. *See* ECF No. 5 at 11 ("Petitioner concedes, as he must, that he has only been detained since December 12, 2025. *See* Pet. ¶ 21.").

[4] At the time of filing, Petitioner had been in detention for nine weeks. Since then, Petitioner's post-final-order detention has increased to approximately fifteen weeks, or almost four months.

[5] The structure of *Zadvydas* confirms that the six-month period operates as a presumption rather than a rigid jurisdictional bar. During the initial six months, detention is presumptively reasonable and the government bears no burden to justify confinement. However, that presumption may be overcome if a petitioner

to Honduras is not reasonably foreseeable. Absent such a showing, his continued detention does not implicate the constitutional concerns addressed in *Zadvydas*, and Respondents are entitled to maintain custody to effectuate Petitioner's removal.[6]

The Court has also considered Petitioner's Supplemental Statement, ECF No. 10, but it does not alter this conclusion. Petitioner's disagreement with the outcome of his reasonable fear proceedings and his claim that ICE is relying on the same convictions that previously resulted in his release under an Order of Supervision concern the merits of his underlying immigration proceedings and ICE's decision to revoke his prior release, not whether his present detention is unlawful under § 1231. Likewise, Petitioner's assertion that he has been detained since April 7, 2026, is consistent with the record and confirms that his detention remains well within the six-month period recognized as presumptively reasonable under *Zadvydas*.

Finally, Petitioner argues that he should not have been detained in April 2026. He contends that since the drug possession and driving under the influence misdemeanors occurred in April 2024, and since ICE released him from custody in July 2024, ICE is now "prosecuting" him for misdemeanor offenses that it previously found were insufficient to keep him detained. ECF No. 8 at 2. This argument is unavailing. Although the offenses may have been committed in April 2024,

---

demonstrates that removal is not reasonably foreseeable, even within the six-month period. *See Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no longer authorized." (citation omitted)). Here, even assuming such a showing could be made at this stage, Petitioner has not alleged or demonstrated that his removal is not reasonably foreseeable.

[6] Respondents further argue that Petitioner requests additional due process than what is required under *Zadvydas*, and that even if Petitioner was entitled to additional due process, the relevant test under *Mathews v. Eldridge* does not require the relief he seeks and weighs in favor of his continued detention. ECF No. 5 at 13–19. This Court has previously recognized that *Zadvydas* defines the process to which Petitioner is entitled. *See, e.g.*, *Wang v. Crawford, et al.*, No. 2:26-cv-111, ECF No. 12 at 8, *report and recommendation adopted*, No. 2:26-cv-111, ECF No. 13. Accordingly, the Court need not separately address Respondents' arguments regarding due process under *Mathews v. Eldridge*.

Petitioner was not convicted of either charge until 2025, with his conviction for driving under the influence being on March 20, 2025, and his conviction for drug possession being on June 12, 2025. ECF No. 5, attach. 6. Additionally, on December 19, 2025, an Immigration Judge denied Petitioner's request for withholding under removal. ECF No. 5, attach. 13. Accordingly, the record does not support Petitioner's claim that ICE is now "prosecuting" him for his 2024 misdemeanor offenses. Nor does that claim bear on whether his current detention is lawful under § 1231 and *Zadvydas*.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief at this time, without prejudice to his ability to refile should his detention extend beyond the presumptively reasonable period under *Zadvydas*, or should removal become not reasonably foreseeable.

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED** without prejudice.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 24, 2026